IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JUANITA FAYE PUALANI LEE, | ) | CIVIL NO. 10-00687 JMS/BMK |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | DEFENDANT MORTGAGE |
| | ) | ELECTRONIC REGISTRATION |
| MORTGAGE ELECTRONIC | ) | SYSTEMS, INC.'S MOTION TO |
| REGISTRATION SYSTEMS, INC.; | ) | DISMISS, DOC. NO. 57; AND |
| COUNTRYWIDE BANK, FSB; and | ) | (2) GRANTING DEFENDANT |
| DOES 1-10, | ) | COUNTRYWIDE BANK, FSB'S |
| | ) | MOTION TO DISMISS, DOC. NO. |
| Defendants. | ) | 56 |
| _____ | ) | |

**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S
MOTION TO DISMISS, DOC. NO. 57; AND (2) GRANTING DEFENDANT
COUNTRYWIDE BANK, FSB'S MOTION TO DISMISS, DOC. NO. 56**

## I. INTRODUCTION

On October 11, 2010, Plaintiff Juanita Faye Pualani Lee ("Plaintiff")

filed this action in the First Circuit Court of the State of Hawaii alleging state law

claims against Defendants Mortgage Electronic Registration Systems, Inc.

("MERS") and Countrywide Bank, FSB ("Countrywide") (collectively

"Defendants") stemming from MERS's non-judicial foreclosure of Plaintiff's

home located at 954 Alewa Drive, Honolulu, Hawaii 96817 (the "subject

property"). On November 19, 2010, MERS removed the action to this court.

On January 3, 2011, the Judicial Panel on Multidistrict Litigation transferred the lawsuit to the United States District Court for the District of Arizona ("MDL Court") for inclusion in the consolidated MERS proceedings pending there. On October 3, 2011, the MDL Court remanded to this court a claim against Countrywide for "common law contract damages," and a claim against Defendants seeking an "accounting." After Defendants filed Motions to Dismiss, the court allowed Plaintiff to file a First Amended Complaint ("FAC") clarifying these claims.

Currently before the court are Countrywide's and MERS's Motions to Dismiss, in which they argue that the FAC fails to state a claim upon which relief can be granted. Based upon the following, the court GRANTS in part and DENIES in part MERS's Motion to Dismiss, and GRANTS Countrywide's Motion to Dismiss.

## II. BACKGROUND

### A. Factual Background

As alleged in the FAC, on or about July 25, 2007, Plaintiff entered into a mortgage loan transaction with Aegis Wholesale Corporation ("Aegis") for $728,000 to purchase the subject property. Doc. No. 52, FAC ¶ 6. The mortgage describes that MERS "is a separate corporation that is acting solely as a nominee

for [Aegis] and [Aegis'] successors and assigns. MERS is the mortgagee under this Security Instrument." Doc. No. 1-1, Compl. Ex. 2 at 2.[1]

Aegis filed for Chapter 11 bankruptcy two weeks after making the loan to Plaintiff. Doc. No. 52, FAC ¶ 9. On December 18, 2008, MERS, as nominee for Aegis, asserted that Plaintiff was in default on her mortgage and filed a Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("Notice of Foreclosure"), setting an auction for February 6, 2009. *Id.* ¶ 8; Doc. No. 1-1, Compl. Ex. 3. The FAC asserts that prior to the Notice of Foreclosure, Plaintiff's lender failed to provide "notice of default, notice of the right to cure, notice of acceleration, and notice of the invocation of the power of sale." Doc. No. 52, FAC ¶ 8. The FAC further asserts that MERS had no authority and/or capacity to foreclose on the subject property given Aegis' bankruptcy, which terminated MERS's rights as a nominee under the mortgage as a matter of law. *Id.* ¶ 10.

The Notice of Foreclosure was signed by "Jason Cotton," who allegedly falsely purported to be the "Assistant Secretary" of MERS, and was

---

[1] Although Plaintiff did not attach the mortgage to the FAC, Plaintiff attached the mortgage and other documents recorded in the Hawaii Bureau of Conveyances to her initial Complaint. The court takes judicial notice of these documents. *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (explaining that the court may take judicial notice of "matters of public record"); *Lindsey v. Matayoshi*, 2012 WL 1656931, at *4 (D. Haw. May 9, 2012) (explaining when the court may take judicial notice of documents).

notarized by "Hillary Cotton," who allegedly knew that he did not hold such position. *Id.* ¶ 8; Doc. No. 1-1, Compl. Ex. 3 at 2. The Notice of Foreclosure instructed that the successful bidder "shall pay at least 10% of the highest successful bid price" at the auction, and pay the remaining balance "no later than the 21st day following sale." Doc. No. 1-1, Compl. Ex. 3 at 1; *see also* Doc. No. 52, FAC ¶ 11.

Countrywide won the auction with a bid of $495,000, and on March 6, 2009, MERS transferred the subject property to Countrywide via a Mortgagee's Quitclaim Deed. Doc. No. 52, FAC ¶ 15; Doc. No. 1-1, Compl. Ex. 6. The FAC asserts that the Quitclaim Deed was signed for MERS by "Kevin A. Durham," who falsely purported to be "Assistant Secretary" of MERS, and was falsely notarized in San Diego County. Doc. No. 52, FAC ¶ 15.

Plaintiff subsequently refused to vacate the subject property, which resulted in Countrywide filing a Complaint for Ejectment in the First Circuit Court of the State of Hawaii on April 1, 2009. *Id.* ¶ 16; Doc. No. 1-1, Compl. Ex. 8. Countrywide obtained an interim Writ of Ejectment and took possession of the subject property, but ultimately voluntarily dismissed the action without prejudice. Doc. No. 52, FAC ¶ 17. On August 17, 2009, Countrywide transferred the subject property to a third party for $560,000. *Id.* ¶ 18; Doc. No. 1-1, Compl. Ex. 11.

**B.      Procedural Background**

On October 11, 2010, Plaintiff filed this class action in the First

Circuit Court of the State of Hawaii alleging six state law claims against

Defendants.  On November 19, 2010, MERS removed the action to this court.

On January 3, 2011, the Judicial Panel on Multidistrict Litigation

transferred the action to the MDL Court for inclusion in the consolidated MERS

proceedings pending there.  On October 3, 2011, the MDL Court remanded Count

II of the Complaint, titled "Common Law Contract Damages Against MERS," and

part of Count VI, titled "Accounting by MERS and by Countrywide" (to the extent

unrelated to the formation and/or operation of the MERS system) to this court.

Defendants filed Motions to Dismiss the Complaint, and in the course

of briefing those motions (and in particular, the effect of Aegis' bankruptcy on

MERS's ability to foreclose), Defendants asserted that the mortgage loan was

transferred to Countrywide prior to Aegis' bankruptcy.  *See* Doc. No. 46.  In light

of this assertion, the court (1) denied the Motions to Dismiss as moot and without

prejudice to refiling by agreement of the parties, and (2) granted Plaintiff leave to

file an amended complaint asserting claims within the scope of those remanded by

the MDL Court.

On March 19, 2012, Plaintiff filed her FAC, asserting a claim against

MERS titled "Contract Collection Damages Against MERS," and a claim against Defendants titled "Accounting by MERS and by Countrywide." On April 19, 2012, Defendants filed their Motion to Dismiss. Plaintiff filed an Opposition on June 4, 2012, and Defendants filed Replies on June 8, 2012. A hearing was held on June 25, 2012.

### III. <u>STANDARDS OF REVIEW</u>

**A.  Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not

simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## B.    Rule 8

A complaint must also meet the requirements of Federal Rule of Civil Procedure 8, mandating that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "true substance, if any, is well disguised" may be dismissed *sua sponte* for failure to satisfy Rule 8. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th

Cir. 2008) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)); *see also McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written . . ., prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.").

Put differently, a district court may dismiss a complaint for failure to comply with Rule 8 where the complaint fails to provide defendants with fair notice of the wrongs they have allegedly committed. *See McHenry*, 84 F.3d at 1178-80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); *cf. Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949 (citations and quotations omitted).

# IV. DISCUSSION

Defendants argue that the FAC fails to state a claim upon which relief can be granted. The court addresses each Count of the FAC in turn.

## A. "Contract Collection Damages Against MERS"

The FAC asserts that MERS "violated the laws of the State of Hawaii and federal bankruptcy laws, and in doing so materially breached contractually the terms and conditions of the underlying mortgage." Doc. No. 52, FAC ¶ 24. Specifically, the FAC asserts that MERS breached the provision in the mortgage that the Lender may "invoke the power of sale and any other remedies permitted by Applicable Law," *see* Doc. No. 1-1, Compl. Ex. 2 ¶ 22, when it: (1) conducted the nonjudicial foreclosure sale even though Aegis was in Chapter 11 bankruptcy; (2) used "robo-signers" to falsely sign and notarize loan documents in violation of Hawaii Revised Statutes ("HRS") §§ 708-852, 710-1061, 456-8, 501-196, 502-41, and 502-3; and (3) violated HRS §§ 667-5 and 667-5.7.[2] Doc. No. 52, FAC ¶ 24. The FAC further asserts that MERS violated the mortgage's provision that the

_____

[2] The court recognizes that the MDL Court dismissed without leave to amend some similar claims raised by Plaintiff, including that Defendants violated HRS § 667-5.7, and fraudulently initiated foreclosure while Aegis was in bankruptcy. *See In re MERS Litig.*, 2012 WL 1906503 (D. Ariz. May 25, 2012). The parties do not raise whether these findings bar Plaintiff from raising such similar claims in this action, even if couched as part of breach of contract claim. The court need not determine this issue, however, given that the court's independent analysis of these claims is consistent with the MDL Court's findings as described below.

"Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in [the mortgage]," *see id.*, when it failed to give Plaintiff notice of her default under the mortgage prior to accelerating payments. MERS argues that none of these allegations amounts to a cognizable claim. The court agrees in part.

### 1. *Aegis' Bankruptcy*

The FAC asserts in the most conclusory fashion that MERS could not foreclose on the subject property because Aegis was in Chapter 11 bankruptcy. *Id.* ¶ 24(c). This generalized assertion fails to state a plausible claim -- assuming that the mortgage loan was part of Aegis' bankruptcy estate, the FAC fails to explain how Aegis' filing for Chapter 11 bankruptcy prevented it from authorizing MERS to foreclose on its behalf in the ordinary course of Aegis' business. Indeed, in general, the filing of Chapter 11 bankruptcy permits a business to continue to operate its business in the ordinary course. *See* 11 U.S.C. §§ 1107(a), 1108; *see also In re Alta+Cast, LLC*, 2004 WL 484881, at *5 (Bankr. D. Del. Mar. 2, 2004) (stating that a "chapter 11 debtor is automatically authorized to operate its business"); *In re Continental Air Lines, Inc.*, 61 B.R. 758, 762 n.1 (S.D. Tex. 1986) (noting that "[d]ebtors-in-possession are automatically given leave to operate their business after filing of a Chapter 11 petition . . . the interplay between sections

1106, 1107, and 1108 makes it clear that the debtor has all of the statutory rights and duties of a trustee in bankruptcy, with a few limited exceptions"). Thus, the fact that Aegis entered into Chapter 11 bankruptcy, on its own, does not support a claim that MERS could not validly foreclose on the subject property on behalf of Aegis.

In opposition, Plaintiff offers no explanation of how she can state a plausible claim based on Aegis' bankruptcy. Indeed, Plaintiff actually *acknowledges* that Aegis's bankruptcy is not really an issue because Countrywide has clarified that it was transferred the mortgage loan before Aegis declared bankruptcy. *See* Doc. No. 61, Pl.'s Opp'n at 9. Specifically, the Complaint asserted a similar claim against Defendants based on Aegis' bankruptcy, and during the previous round of Motions to Dismiss the parties submitted supplemental briefing regarding Aegis' bankruptcy. And in that supplemental briefing, MERS presented evidence that Aegis transferred the mortgage loan to Countrywide before it declared bankruptcy. Doc. No. 46. In its Opposition to the present round of Motions to Dismiss, Plaintiff apparently now accepts that Aegis transferred the mortgage loan to Countrywide before it declared bankruptcy, *see* Doc. No. 61, Pl.'s Opp'n at 9, such that Plaintiff effectively admits that she cannot assert a claim based on Aegis' bankruptcy. The court therefore GRANTS MERS's

Motion to Dismiss Plaintiff's claim based on Aegis' bankruptcy, without leave to amend.

### 2. Use of "Robosigners"

The FAC alleges that MERS used "robo-signers" to falsely sign and notarize loan documents in violation of HRS §§ 708-852, 710-1061, 456-8, 501-196, 502-41, and 502-3. Doc. No. 52, FAC ¶ 24(c). Specifically, the FAC asserts that "Jason Cotton" falsely purported to be the "Assistant Secretary" of MERS on the Notice of Foreclosure, and "Kevin A. Durham" falsely purported to be another "Assistant Secretary" of MERS on the Quitclaim Deed. *Id.* ¶¶ 8, 15.

Putting aside the fact that most of the HRS provisions cited by the FAC appear to be inapplicable,[3] the allegations of the FAC are wholly speculative and therefore fail to state a plausible claim. The FAC fails to assert any facts corroborating the legal conclusion that these individuals lacked authority to sign

---

[3] For example, HRS § 456-8 provides that the attorney general "may prescribe such rules as the attorney general deems advisable concerning the administration of this chapter, the appointment and duties of notaries public, the duties of other officers thereunder, and such measures as may be necessary to prevent the fraudulent use of a notarized document after placement of the notary's seal." HRS § 501-196 provides that "[n]o erasure, alteration, or amendment shall be made upon the registration book after the entry of a certificate of title or of a memorandum thereon, and the approval of the same by the registrar or an assistant registrar except by order of the court recorded with the assistant registrar . . . ." HRS § 502-3 provides that "[t]he registrar, under the direction of the board of land and natural resources, shall appoint a deputy, for whose official acts the registrar shall be responsible, and whose appointment the registrar shall announce by public notice." Given the plain language of these provisions, the court is at a loss as to how they might apply in this action, and Plaintiff offers no explanation.

these documents on behalf of MERS, or any facts explaining how any "robosigning" caused Plaintiff any harm or damages. Further, it is unclear what claim Plaintiff could possibly raise where MERS has not contested these individuals' authority to act. The court therefore joins other courts addressing similar claims in finding that such conclusory assertions of "robo-signing" fail to state a plausible claim. *See Abubo v. Bank of New York Mellon*, 2011 WL 6011787, at *7 (D. Haw. 2011) (citing *Cooper v. Bank of New York Mellon*, 2011 WL 3705058, at *13 (D. Haw. Aug. 23, 2011) (rejecting identical argument that Durham was not authorized to execute an assignment on behalf of MERS); *Singer v. BAC Home Loan Servicing, LP*, 2011 WL 2940733, at *2 (D. Ariz. July 21, 2011) (rejecting as unsupported an assertion that a "robosigner" unlawfully signed a substitution of trustee form)); *see also Nastrom v. New Century Mortg. Corp*., 2012 WL 2090145, at *6 (E.D. Cal. June 8, 2012) (dismissing claim where "Plaintiffs offer no factual allegations (or legal theory) indicating how the alleged robo-signing of documents which assigned the subject loans harmed Plaintiffs"); *Block v. BAC Home Loans Servicing LP*, 2012 WL 2031640, at *4 (E.D. Mich. June 6, 2012) ("Plaintiffs' vague and speculative assertions of what has been labeled as 'robo-signing' are insufficient to state a plausible claim of fraud or irregularity."); *Schultz v. BAC Home Loans Servicing, LP*, 2011 WL 3684481, at

*2 (D. Ariz. Aug. 23, 2011) ("[A]lthough Plaintiff asserts that various 'robosigners' were involved with signing documents pertaining to her mortgage, she has provided no facts supporting this claim or why she is accordingly entitled to relief for breach of contract.").

The court therefore GRANTS MERS's Motion to Dismiss Plaintiff's claim based on robo-signing. Because amendment would be futile, this dismissal is without leave to amend.

### 3. HRS § 667-5.7

HRS § 667-5.7 provides that "[a]t any public sale pursuant to section 667-5, the successful bidder at the public sale, as the purchaser, shall not be required to make a down payment to the foreclosing mortgagee of more than ten percent of the highest successful bid price." The FAC asserts that MERS violated HRS § 667-5.7 by requiring that the successful bidder pay the full purchase price twenty-one days after the auction, where closing is scheduled for thirty days after the auction. The FAC acknowledges that this court has rejected this same claim asserted by Plaintiff's counsel in other cases, and explains that Plaintiff includes this claim "solely for the purpose of preserving that claim for the record on appeal." Doc. No. 52, FAC ¶ 27.

The court rejects this claim for the same reasons as explained in *Saiki*

*v. LaSalle Bank Nat'l Ass'n*, 2011 WL 601139 (D. Haw. Feb. 10, 2011); *Gaspar v. Bank of Am., N.A.*, 2010 WL 4226466 (Oct. 18, 2010), and *Rundgren v. Bank of New York Mellon*, 2010 WL 4066878 (Oct. 14, 2010). As explained in these orders, § 667-5.7 does not create any requirement limiting when, after the public sale, the mortgagee can demand payment of the balance of the bid price. The court came to this conclusion based on the plain language of the statute -- the phrase "[a]t any public sale" acts as a temporal limitation and qualifies the words that follow, meaning that at the public sale, a mortgagee cannot require the successful bidder to pay more than a ten percent down payment. Although recognizing that the analysis could stop at this point, the court nonetheless considered the legislative history of § 667-5.7 to find additional support for its interpretation, and also rejected Plaintiff's policy arguments on the basis that the court cannot rewrite the statute where the language is clear. *See Gaspar*, 2010 WL 4226466, at *4-6; *Rundgren*, 2010 WL 4066878, at *3-4. The court has also rejected arguments by Plaintiff's counsel that § 667-5.7 is at all ambiguous and/or the court should certify this issue to the Hawaii Supreme Court. *Saiki*, 2011 WL 601139, at *5-6.

The court therefore rejects that Plaintiff can state a cognizable claim for violation of HRS § 667-5.7 for the same reasons the court has already explained. Thus, the court DISMISSES Plaintiff's claim for violation of HRS

§ 667-5.7 without leave to amend.

### 4.    *HRS § 667-5*

HRS § 667-5 provides:

> When a power of sale is contained in a mortgage, and
> where the mortgagee, the mortgagee's successor in
> interest, or any person authorized by the power to act in
> the premises, desires to foreclose under power of sale
> upon breach of a condition of the mortgage, the
> mortgagee, successor, or person shall be represented by
> an attorney who is licensed to practice law in the State
> and is physically located in the State. . . .

Section 667-5 further requires that the mortgagee's attorney shall take various

steps in seeking a nonjudicial foreclosure.

The FAC does not identify any particular provision of § 667-5 that

MERS allegedly violated, much less include any factual allegations explaining

how MERS violated HRS § 667-5.  Because the FAC fails to give MERS notice of

the claim against it, the court GRANTS MERS's Motion to Dismiss.

As to whether Plaintiff could amend the FAC to state a plausible

claim, Plaintiff argues in her Opposition that MERS violated § 667-5 by failing to

identify the true mortgagee in the Notice of Foreclosure.  Doc. No. 61, Pl.'s Opp'n

at 12.  According to MERS, Aegis transferred the mortgage loan to Countrywide

such that Countrywide and not Aegis owned the mortgage loan at the time of

foreclosure.  If true, the Notice of Foreclosure failed to identify Countrywide as the

16

mortgagee and instead states that foreclosure is being brought by MERS, as

nominee for Aegis.  The parties have not addressed in any meaningful way whether

HRS § 667-5 requires the Notice of Foreclosure to properly identify the mortgagee

(*see* HRS § 667-5(a)(1) (requiring the attorney to "[g]ive notice of the

mortgagee's, successor's or person's intention to foreclose")),[4] much less how any

failure to identify Countrywide in the Notice of Foreclosure caused Plaintiff

damages.  As a result, the court cannot say at this time that amendment would be

futile.  The court therefore GRANTS MERS's Motion to Dismiss Plaintiff's claim

for violation of § 667-5, with leave to amend.

### 5. *Failure to Give Notice of Default*

MERS did not address the FAC's assertion that MERS violated the

terms of the Mortgage by failing to give notice of Plaintiff's default prior to the

filing its Notice of Foreclosure such that MERS could not foreclose on the subject

property.  *See* Doc. No. 52, FAC ¶ 24(a)(ii).  Indeed, MERS apparently missed this

allegation in the FAC -- MERS erroneously asserts in its Reply that Plaintiff raised

this claim for the first time in her Opposition and that MERS is collecting evidence

to rebut such claim.  *See* Doc. No. 63, MERS Reply at 11 n.7.  The court will not

---

[4] Although MERS summarily argues in its Reply that HRS § 667-5 "does not require that the note holder be named on the Notice in the affidavit of sale," Doc. No. 63, MERS Reply at 12, the case that MERS cites for such proposition, *Lee v. HSBC Bank USA*, 121 Haw. 287, 292, 218 P.3d 775, 780 (2009), does not address this issue.

consider evidence on a Motion to Dismiss, much less arguments and/or evidence presented after the briefing has already been submitted. The court therefore DENIES MERS's Motion to Dismiss as to Plaintiff's claim for failure to properly notify Plaintiff of the default before seeking foreclosure.

## B.    Accounting by MERS and by Countrywide

The FAC asserts that this claim is:

> based on allegations that MERS and CW as co-conspirators were unjustly enriched by MERS' material breach of contract aforesaid, depriving Plaintiff of title to her property and to its possession, use and enjoyment, and to her equity therein, entitling Plaintiff to a full accounting of all such ill gotten profits and all such unjust enrichment, including the imposition of constructive trusts imposed upon each of them as involuntary trustees for the benefit of the Plaintiff to the extent that said profits can be traced to the purchase and generation of other profits, and including an award of attorneys' fees and costs.

Doc. No. 52, FAC ¶ 29.

The FAC leaves wholly unanswered what Countrywide did that is the basis of any claim and/or how it acted as a "co-conspirator" with MERS. The FAC includes no allegations of any wrongdoing by Countrywide, and if all that Countrywide did was purchase the subject property (as alleged in the FAC), then Plaintiff has no basis to assert a claim against it.

Further, even setting aside this basic pleading deficiency, this court

has already explained that a claim for an "accounting" fails as a matter of law. *See Gaspar*, 2010 WL 4226466, at *7. "The action of accounting is designed to provide a remedy to compel a person who, by virtue of some confidential or trust relationship, has received or been entrusted with money or property belonging to another or which is to be applied or disposed of in a particular manner, to render an account thereof." *Block v. Lea*, 5 Haw. App. 266, 277, 688 P.2d 724, 732-33 (1984) (quoting 1 Am. Jur. 2d Accounts & Accounting § 45 (1962)). "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies is . . . the absence of an adequate remedy at law." *Porter v. Hu*, 116 Haw. 42, 55, 169 P.3d 994, 1007 (Haw. App. 2007) (citation and quotation signals omitted).

The FAC contains no facts explaining why Plaintiff is entitled to an equitable accounting from Defendants -- a mortgagee does not have a "confidential or trust relationship" with its mortgagor unless the mortgagee exceeds its role as a lender of money. *See, e.g.*, *Gzell v. Novastar Mortg., Inc*., 2010 WL 3293537, at *10 (E.D. Cal. Aug. 19, 2010) ("A financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (quotation and citation signals omitted)); *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp.

2d 1092, 1104 (9th Cir. 2010) (dismissing breach of fiduciary duty claim because plaintiff failed to plead facts to "override the presumption that a lender owes no fiduciary duty to its borrowers"); *Mulato v. WMC Mortg. Corp.*, 2010 WL 1532276, at *2 (N.D. Cal. Apr. 16, 2010) (dismissing claim where plaintiff failed to plead facts to show that MERS exceeded its traditional role involved with lender of money to support a duty).  Nor has Plaintiff pled any factual allegations from which the court can infer that no adequate remedy at law exists, such as, for example, that an accounting is necessary because the mortgage accounts are so complicated that only a court can discern them.  *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478-79 (1962).

In sum, Plaintiff is not entitled to an accounting; indeed, if she is able to state a claim upon which relief may be granted, she may seek such information through discovery.  The court therefore GRANTS Defendants' Motions to Dismiss Count VI of the FAC without leave to amend.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS in part and DENIES in part MERS's Motion to Dismiss, and GRANTS Countrywide's Motion to Dismiss. Plaintiff's claim against MERS for breach of contract by failing to provide notice of default before filing its Notice of Foreclosure remains.

If Plaintiff so chooses, she may file a Second Amended Complaint, consistent with this Order asserting a claim against MERS and/or Countrywide for violation of HRS § 667-5, by July 16, 2012. Plaintiff is further notified that a Second Amended Complaint supersedes the Complaint and FAC. *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the court will treat the Complaint and FAC as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original Complaint and FAC is waived if it is not raised in the Second Amended Complaint. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

This Order limits Plaintiff to filing a Second Amended Complaint that attempts to cure the specific deficiencies identified in this Order. That is, this Order does not grant Plaintiff leave to amend to file a Second Amended Complaint that asserts any different theories or causes of action. In limiting Plaintiff's ability at this time to file a Second Amended Complaint, the court recognizes that Plaintiff asserted in her Opposition and at the June 25, 2012 hearing that she may wish to assert a fraud claim and that discovery may be necessary to uncover the details of such claim. But as the court explained at the June 25, 2012 hearing, if Plaintiff believes that she can assert a plausible fraud claim, Plaintiff must first file a

separate Motion complying with the requirements of Federal Rule of Civil

Procedure 15, regarding amended pleadings.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 27, 2012.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge