IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JUANITA FAYE PUALANI LEE, | ) CIVIL NO. 10-00687 JMS/BMK |
| | ) |
| Plaintiff, | ) ORDER (1) GRANTING |
| | ) DEFENDANT MORTGAGE |
| vs. | ) ELECTRONIC REGISTRATION |
| | ) SYSTEMS, INC.'S MOTION TO |
| MORTGAGE ELECTRONIC | ) DISMISS SECOND AMENDED |
| REGISTRATION SYSTEMS, INC.; | ) COMPLAINT, DOC. NO. 70; |
| COUNTRYWIDE BANK, FSB; and | ) (2) GRANTING DEFENDANT |
| DOES 1-10, | ) COUNTRYWIDE BANK, FSB'S |
| | ) MOTION TO DISMISS SECOND |
| Defendants. | ) AMENDED COMPLAINT, DOC. |
| | ) NO. 69; AND (3) GRANTING |
| _____ | ) LIMITED LEAVE TO AMEND |

**ORDER (1) GRANTING DEFENDANT MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT, DOC. NO. 70; (2) GRANTING DEFENDANT
COUNTRYWIDE BANK, FSB'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT, DOC. NO. 69; AND (3) GRANTING LIMITED
LEAVE TO AMEND**

## I. INTRODUCTION

Although filed over two years ago, this action is still in the pleadings

phase.  Plaintiff Juanita Faye Pualani Lee ("Plaintiff") originally filed this action in

the First Circuit Court of the State of Hawaii alleging state law claims against

Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and

Countrywide Bank, FSB ("Countrywide") (collectively "Defendants") stemming

from MERS' non-judicial foreclosure of Plaintiff's home located at 954 Alewa

Drive, Honolulu, Hawaii 96817 (the "subject property").  After MERS removed the action to this court, the Judicial Panel on Multidistrict Litigation transferred the lawsuit to the United States District Court for the District of Arizona ("MDL Court") for inclusion in the consolidated MERS proceedings pending there.  On October 3, 2011, the MDL Court remanded to this court a claim against Countrywide for "common law contract damages," and a claim against Defendants seeking an "accounting."

These two claims have been the subject of three rounds of motions to dismiss -- Plaintiff filed her First Amended Complaint ("FAC") clarifying these claims after Defendants filed a first set of Motions to Dismiss.  On June 27, 2012, the court granted in part MERS' Motion to Dismiss and granted Countrywide's Motion to Dismiss the FAC (the "June 27, 2012 Order"), which left Plaintiff's claim for breach of contract against MERS for failure to give notice of Plaintiff's default prior to seeking to foreclose, and granted Plaintiff leave to amend to assert a claim for breach of contract based on violation of Hawaii Revised Statutes ("HRS") § 667-5.

On July 16, 2012, Plaintiff filed her "Second Amendment to Complaint (1) Reasserting For Purposes of Appeal All Prior Remanded Counts Whether Dismissed or Not, (2) Specifically Restating Count Two, and

(3) Specifically Concerning Issues Relating to HRS Section 667-5" ("SAC").[1]

Currently before the court are Defendants' Motion to Dismiss. Based on the

following, the court GRANTS the Motions to Dismiss, with leave for Plaintiff to

file a Third Amended Complaint asserting a breach of contract based on section 22

of the mortgage for failure to provide a notice of default.

## II.  BACKGROUND

### A.    Factual Background

As alleged in the SAC, on or about July 25, 2007, Plaintiff entered

into a mortgage loan transaction with Aegis Wholesale Corporation ("Aegis") for

$728,000 to purchase the subject property. Doc. No. 68, SAC ¶ 6.

The mortgage describes that MERS "is a separate corporation that is

acting solely as a nominee for Lender and Lender's successors and assigns. MERS

is the mortgagee under this Security Instrument." Doc. No. 1-1, Compl. Ex. 2 at

2;[2] *see also* Doc. No. 68, SAC ¶ 7. The mortgage further provides:

---

[1] Plaintiff refers to her pleading as a "second amendment to complaint" rather than a "second amended complaint" because "what is being amended is that part of her complaint which was remanded back to the District Court by the MDP." Doc. No. 68, SAC ¶ 31. Plaintiff also attaches to her pleading both her original Complaint and the FAC, apparently to "reassert[] for purposes of appeal all prior remanded counts whether dismissed or not." *Id.* (title). For ease of reference, the court refers to the pleading as the SAC. The court also does not address "reasserted" claims that were already dismissed without leave to amend.

[2] Although Plaintiff did not attach the mortgage to the SAC, Plaintiff attached the mortgage and other documents recorded in the Hawaii Bureau of Conveyances to her initial

(continued...)

> Borrower does hereby mortgage, grant and convey to
> MERS (solely as nominee for Lender and Lender's
> successors and assigns) and to the successors and assigns
> of MERS, with power of sale [the subject property]. . . .
> Borrower understands and agrees that MERS holds only
> legal title to the interests granted by Borrower in this
> Security Instrument, but, if necessary to comply with the
> law or custom, MERS (as nominee for Lender and
> Lender's successors and assigns) has the right: to exercise
> any or all of those interests, including, but not limited to,
> the right to foreclose and sell the Property; and to take
> and action required of the Lender. . . .

Doc. No. 1-1, Compl. Ex. 2 at 3-4.  Finally, the mortgage notifies Plaintiff that

"[t]he Note or a partial interest in the Note (together with this Security Instrument)

can be sold one or more times without prior notice to Borrower." *Id*. at 12.

Aegis subsequently transferred the mortgage loan to Countrywide.

Doc. No. 68, SAC ¶¶ 23-25.  Some time later, MERS noticed a nonjudicial

foreclosure to take place on February 6, 2009. *Id.* ¶ 8.  Despite the fact that the

mortgage loan had been transferred to Countrywide, the Notice of Intention to

Foreclose Under Power of Sale (the "NOI") asserts that MERS, as nominee for

Aegis (as opposed to Countrywide), will hold a public auction on February 6,

---

[2](...continued)
Complaint.  The court takes judicial notice of these documents.  *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty*., 547 F.3d 943, 955 (9th Cir. 2008) (explaining that the court may take judicial notice of "matters of public record"); *Lindsey v. Matayoshi*, 2012 WL 1656931, at *4 (D. Haw. May 9, 2012) (explaining when the court may take judicial notice of documents).

2009.  *See* Doc. No. 1-1, at Ex. 3.  At the nonjudicial foreclosure sale, Countrywide was the high bidder with $495,000.  Doc. No. 68, SAC ¶ 18.

Plaintiff asserts that MERS and Countrywide breached the terms of the mortgage by conducting the nonjudicial foreclosure.  Specifically, Plaintiff asserts that MERS breached section 22 of the mortgage, which provides that:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which date the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

*Id.* ¶ 32.

The SAC further asserts that MERS and/or Countrywide breached the mortgage by violating HRS § 667-5.  *Id.* ¶ 36.  Specifically, the SAC asserts that MERS' incorrect assertion in the NOI that Aegis, as opposed to Countrywide, owned the mortgage loan raised a question as to who owned the mortgage loan and that neither MERS nor Countrywide properly established that it was the mortgagee. *Id.* ¶ 37.  The SAC further asserts that because the mortgage loan was transferred to Countrywide, MERS was no longer a "mortgagee" at the time of the foreclosure and therefore could not conduct the auction.  *Id.* ¶¶ 38-50.

5

The SAC asserts that as a result of these breaches of contract, Plaintiff "was injured and has suffered extensive monetary damages and incurred extensive attorneys' fees and costs," including that she was deprived of the subject property where she purchased it for $728,000, it was sold to Countrywide at auction for $495,000, and Countrywide subsequently liquidated and sold it for $560,000.  *Id.* ¶ 51.

## B.    Procedural Background

On October 11, 2010, Plaintiff filed this class action in the First Circuit Court of the State of Hawaii alleging six state law claims against Defendants.  On November 19, 2010, MERS removed the action to this court.

On January 3, 2011, the Judicial Panel on Multidistrict Litigation transferred the action to the MDL Court for inclusion in the consolidated MERS proceedings pending there.  On October 3, 2011, the MDL Court remanded Count II of the Complaint, titled "Common Law Contract Damages Against MERS," and part of Count VI, titled "Accounting by MERS and by Countrywide" (to the extent unrelated to the formation and/or operation of the MERS system) to this court.

Defendants filed Motions to Dismiss the Complaint, and in the course of briefing those motions (and in particular, the effect of Aegis' bankruptcy on MERS' ability to foreclose), Defendants asserted that the mortgage loan was

transferred to Countrywide prior to Aegis' bankruptcy.  *See* Doc. No. 46.  In light

of this assertion, the court (1) denied the Motions to Dismiss as moot and without

prejudice to refiling by agreement of the parties, and (2) granted Plaintiff leave to

file an amended complaint asserting claims within the scope of those remanded by

the MDL Court.

On March 19, 2012, Plaintiff filed her FAC, asserting a claim against

MERS titled "Contract Collection Damages Against MERS," and a claim against

Defendants titled "Accounting by MERS and by Countrywide."  The June 27, 2012

Order subsequently granted in part MERS' Motion to Dismiss and granted

Countrywide's Motion to Dismiss the FAC.  Specifically, the June 27, 2012 Order

granted Plaintiff leave to file a contract claim based on (1) violation of HRS

§ 667-5, and (2) failure to give notice of Plaintiff's default prior to seeking to

foreclose.

On July 16, 2012, Plaintiff filed her SAC.  Defendants filed Motions

to Dismiss on August 23, 2012, and Plaintiff filed an Opposition to MERS' Motion

only on November 5, 2012 (Plaintiff did not file an Opposition to Countrywide's

Motion).  MERS filed a Reply on November 12, 2012.  Pursuant to Local Rule

7.2(d), the court determines the Motions to Dismiss without a hearing.

## III.  <u>STANDARDS OF REVIEW</u>

### A.     **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Iqbal*, 556 U.S. at 679.

## B.      Rule 8

A complaint must also meet the requirements of Federal Rule of Civil Procedure 8, mandating that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  A complaint that is so confusing that its "true substance, if any, is well disguised" may be dismissed *sua sponte* for failure to satisfy Rule 8.  *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)); *see also McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written . . ., prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.").

Put differently, a district court may dismiss a complaint for failure to comply with Rule 8 where the complaint fails to provide defendants with fair notice of the wrongs they have allegedly committed. *See McHenry*, 84 F.3d at 1178-80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); *cf. Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949 (citations and quotations omitted).

## IV. <u>DISCUSSION</u>

The only claim remaining in this action is a breach of contract claim -- the MDL Court remanded Plaintiff's claims for breach of contract and for an "accounting," and the June 27, 2012 Order dismissed the "accounting" claim without leave to amend. In the SAC, Plaintiff bases her breach of contract claim on two assertions -- (1) that MERS breached the terms of the mortgage by failing

10

to give notice of Plaintiff's default before seeking foreclosure; and (2) that MERS and/or Countywide breached the terms of the mortgage by failing to comply with HRS § 667-5.  Defendants argue that the SAC fails to state a cognizable claim for breach of contract.  Based on the following, the court agrees.

## A.       Failure to Give Notice of Default

Section 22 of the mortgage requires the "Lender" to give notice of default to Plaintiff prior to an acceleration of the sums secured by the mortgage loan:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which date the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

Doc. No. 1-1, Compl. Ex. 3 at § 22.  Without any elaboration, the SAC asserts that MERS violated this provision.  *See* Doc. No. 68, SAC ¶ 32.

This allegation is wholly conclusory and therefore fails to assert a plausible claim that MERS breached section 22 of the mortgage.  *See Iqbal*, 556 U.S. at 678 (stating that Rule 8 requires more than "the-defendant-unlawfully -harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a

formulaic recitation of the elements of a cause of action will not do").  Although the SAC asserts that MERS allegedly violated section 22 of the mortgage, the SAC fails to provide any explanation as to how MERS violated this provision and how this breach caused Plaintiff damages.  *See Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("Generalized allegations of a contractual breach are not sufficient.").  Without this information, both MERS and the court are left guessing as to the basis of this claim -- is it Plaintiff's contention that she never received a notice of default, that the notice of default was not timely, or something else?  As to damages, is it Plaintiff's contention that she would have cured her default or taken some other action if notice was properly provided?  Given these unanswered questions, the SAC fails to raise a reasonable inference that MERS is liable for the misconduct alleged.  *See Iqbal*, 556 U.S. at 678.  The court therefore GRANTS MERS' Motion to Dismiss Plaintiff's breach of contract claim based on a violation of section 22 of the mortgage.

Given the vagaries of this claim, combined with the fact that this is the first time MERS has moved to dismiss this claim, the court finds that Plaintiff should be granted leave to amend this claim one more time.  In determining that Plaintiff should be granted leave to amend, the court is aware that Section 22 of the mortgage requires the "Lender" to provide notice of default, and MERS is

12

technically defined in the mortgage as the "nominee" of the "Lender."[3]  The court

is also aware that MERS submitted evidence that Countrywide sent to Plaintiff the

notice of default required by section 22 of the mortgage.  *See* Doc. No. 70-4,

MERS Mot. at Ex. B.  This evidence suggests that Countrywide complied with the

requirements of section 22 of the mortgage such that a claim asserting that either

Countrywide or MERS failed to provide the notice would likely ultimately fail.

But as explained above, the SAC is so wholly conclusory that the court cannot

discern the basis of Plaintiff's claim, and the court does not consider evidence

(specifically, the notice of default attached as Exhibit B to MERS' Motion to

Dismiss) on a motion to dismiss.[4]  Given these issues, the court cannot say at this

time that granting leave to amend would be futile.

> The court therefore grants Plaintiff leave to amend to assert a breach

---

[3]  MERS argues that in light of section 22's requirement that the "Lender" provide the notice, it had no obligation to provide the notice of default.  Such argument does not address, however, whether MERS agreed with Countrywide to undertake this obligation.  If the basis of Plaintiff's claim is that she was provided no notice of default whatsoever, the court is unwilling at this time to find Plaintiff cannot assert a claim against MERS where MERS sought foreclosure.

[4]  MERS argues that the court may take judicial notice of the notice of default sent by Countrywide because it was attached to the Mortgagee's Affidavit of Sale Under Power of Sale ("Affidavit of Sale").  *See* Doc. No. 70, MERS Mot. at 5 n.2, 16-17.  Although an Affidavit of Sale itself can be used "as evidence that the power of sale was duly executed," *see* HRS § 667-8 (2010), it does not follow that the facts contained within the Affidavit (or attachments to the Affidavit) are "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  *See Lindsey*, 2012 WL 1656931, at *4 (quoting Fed. R. Evid. 201(b)).  The court therefore declines to take judicial notice of these documents.

of contract claim against Defendants for failure to provide the notice of default, if she so wishes.  If Plaintiff chooses to file a Third Amended Complaint, she is cautioned that a claim for breach of section 22 of the mortgage must be based in fact.  *See* Fed. R. Civ. P. 11(b)(3).  That is, the court cautions Plaintiff that if in fact she was provided a notice of default as suggested by Countrywide, neither MERS nor Countrywide would appear to be in violation of section 22 of the mortgage.

**B.   HRS § 667-5**

The SAC asserts a breach of contract claim based on the assertion that MERS and/or Countrywide violated HRS § 667-5, which outlines the procedure for a nonjudicial foreclosure.[5]  Although the SAC provides no explanation as to how a violation of § 667-5 constitutes a breach of contract, the SAC asserts various

---

[5] Section 667-5(a) provides:
> When a power of sale is contained in a mortgage, and where the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act in the premises, desires to foreclose under power of sale upon breach of a condition of the mortgage, the mortgagee, successor, or person shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State.  The attorney shall:
>> (1) Give notice of the mortgagee's, successor's, or person's intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice once in each of three successive weeks (three publications), the last publication to be not less than fourteen days before the day of sale, in a newspaper having a general circulation in the county in which the mortgaged property lies; and
>> (2) Give any notices and do all acts as are authorized or required by the power contained in the mortgage.

violations of § 667-5, including that (1) Defendants did not establish that they had

possession of the promissory note; (2) MERS misstated in the NOI that it was

acting on behalf of Aegis instead of MERS; and (3) MERS did not have authority

to foreclose.  Doc. No. 68, SAC ¶¶ 41-50.  Plaintiff apparently crafted her claim as

a breach of contract claim as opposed to a stand-alone claim for violation of § 667-

5 given that the MDL Court remanded only Plaintiff's claims for breach of contract

and for an accounting.  Plaintiff's attempt to assert a violation of § 667-5 as a

breach of contract fails for a variety of reasons.

As an initial matter, although the SAC outlines several theories as to

how Defendants allegedly violated § 667-5, the SAC fails to explain in any manner

whatsoever how a violation of § 667-5 constitutes a breach of contract.  Although

the court presumes that the SAC bases this claim on a breach of the mortgage (as

opposed to some other contract), the SAC fails to even assert that a violation of

§ 667-5 is a violation of the mortgage, and fails to identify the particular provision

of the mortgage that Defendants allegedly violated.  While at least one court has

found that a mortgage requires the Lender to comply with § 667-5, *see In re*

*Kekauoha-Alisa*, 674 F.3d 1083, 1090 (9th Cir. 2012) (reciting that the bankruptcy

court determined that the "parties' mortgage agreement specified that Lenders

could foreclose only in compliance with the procedural requirements of HRS

§ 667-5," and that the parties did not dispute this finding on appeal), that does not absolve Plaintiff from meeting her pleading requirements.  As the court explained in *Gaspar v. Bank of America, N.A.*, 2010 WL 4226466, at *3 (D. Haw. Oct. 18, 2010), "Defendants are not required to connect the dots through inference . . . to determine what provision Plaintiff[] assert[s] is violated.  Rather, the [SAC] itself must contain sufficient allegations to show that relief is plausible."  Plaintiff's breach of contract claim fails on this basis alone.

Further, even assuming that a provision in the mortgage requires Defendants to comply with § 667-5, Plaintiff's claim still fails because none of Defendants' actions identified by Plaintiff constitutes a violation of § 667-5.

Indeed, this court has already rejected in numerous other cases claims asserting violations of § 667-5 based on the allegations contained in the SAC.  For example, as to Plaintiff's assertion that MERS could not foreclose without possession of the promissory note, this court has rejected that HRS § 667-5 includes any affirmative requirement that the mortgagee produce the note.  *See, e.g.*, *Nottage v. Bank of New York Mellon*, 2012 WL 5305506, at *7 (D. Haw. Oct. 25, 2012); *Pascual v. Aurora Loan Servs.*, 2012 WL 3583530, at *3 (D. Haw. Aug. 20, 2012) ("*Pascual II*"); *Fed. Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *5 n.5 (D. Haw. Feb. 23, 2012); *Lindsey v. Meridias Cap., Inc.*, 2012 WL 488282, at *8

(D. Haw. Feb. 14, 2012).

*Pascual II* rejected that HRS § 667-5 includes an affirmative requirement that the mortgagee produce the note -- the plain language of § 667-5 includes no such requirement, and reading such requirement into § 667-5 would be inconsistent with decisions in other jurisdictions that have refused to read a "show me the note" requirement into nonjudicial foreclosure statutes that do not otherwise explicitly include such a requirement. *See* 2012 WL 3583530, at  *3 (collecting cases).  As a result, *Pascual II* concluded that the Hawaii Supreme Court would reject that HRS § 667-5 includes a "show me the note" requirement. *Id*. at *4.

In opposition, Plaintiff raises the same arguments that the court already rejected in *Pascual II* -- that the court should follow *U.S. Bank National Ass'n v. Kimball*, 27 A.3d 1087 (Vt. 2011), and *In re Veal*, 450 B.R. 897 (B.A.P. 9th Cir. 2011).  But as *Pascual II* explains, these cases are no help to Plaintiff -- both cases addressed a mortgagee's legal standing to foreclosure through a court process (as opposed to here where the mortgagee is defending against an action brought by the borrowers), and neither interpreted HRS § 667-5, much less even addressed a nonjudicial foreclosure statute. *Pascual II*, 2012 WL 3583530, at *5. Indeed, *In re Veal* actually recognized that nonjudicial foreclosure statutes may change the common law rule requiring a mortgagee to hold the underlying note,

17

which appears to be exactly what the Hawaii legislature did in enacting § 667-5. *Id.*

And the court has also rejected in various other cases claims asserting a violation of § 667-5 based on MERS' alleged lack of authority to foreclose. *See, e.g.*, *Nottage*, 2012 WL 5305506, at *6; *Benoist v. U.S. Bank Nat'l Ass'n*, 2012 WL 3202180, at *4 (D. Haw. Aug. 3, 2012); *Pascual v. Aurora Loan Servs., LLC*, 2012 WL 2355531, at *4 (D. Haw. June 19, 2012) ("*Pascual I*"); *Lindsey*, 2012 WL 488282, at *3 n.6; *Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 1103 (D. Haw. 2011); *Abubo v. Bank of New York Mellon*, 2011 WL 6011787, at *8 (D. Haw. Nov. 30, 2011).

*Pascual I* explains that *Cervantes v. Countrywide Home Loans*, 656 F.3d 1034 (9th Cir. 2011), held that claims attacking the MERS recording system as a fraud fail, given that mortgages generally disclose MERS' role as acting "solely as nominee for Lender and Lender's successors and assigns," and that MERS has the right to foreclose and sell the property. *See Cervantes*, 656 F.3d at 1042. And just like in *Cervantes* (and *Pascual I*), the mortgage in this action expressly notifies Plaintiff of MERS' role as the nominee for the "Lender and Lender's successors and assigns."[6] *See* Doc. No. 1-2, Compl. Ex. 2 at 3. As a

---

[6] Plaintiff argues that *Cervantes* does not preclude her claim because it recognized that "the legality of MERS's role as a beneficiary may be at issue where MERS initiates foreclosure in its own name, or where the plaintiffs allege a violation of state recording and foreclosure

(continued...)

result, the mortgage authorized MERS to take any action required of the Lender or the Lender's successors and assigns, which includes the right to foreclose.

The only new allegation in this action compared to these previous cases is that MERS misidentified in the NOI that it was acting on behalf of Aegis instead of Countrywide.  This additional fact does not provide a basis to assert a plausible violation of § 667-5.  Plaintiff has not, and cannot, identify any requirement in § 667-5 requiring a NOI to identify the name of the Lender and/or noteholder.  And where the plain language of § 667-5 outlines the particular steps required for a nonjudicial foreclosure, the court will not read into § 667-5 additional requirements without statutory support.  *Cf. Gaspar*, 2010 WL 4226466, at *6 (rejecting claim that mortgagee's reference to a Website for instructions on the foreclosure auction violated § 667-5 because § 667-5 "provides no requirements regarding the *content* of the notice"); *see also T-Mobile USA, Inc. v. Cnty. of Haw. Planning Comm'n*, 106 Haw. 343, 352-53, 104 P.3d 930, 939-40 (Haw. 2005) ("It is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give

---

[6](...continued)
statutes based on the designation."  Doc. No. 75, Pl.'s Opp'n at 20 (quoting *Cervantes*, 656 F.3d at 1044).  But this is not a case where MERS initiated the foreclosure in its own name; rather, MERS initiated foreclosure on behalf of the Lender.

effect to the statute's plain and obvious meaning." (quotations omitted)).  Further,

it remains without dispute that MERS had the right to institute the non-judicial

foreclosure under the mortgage for both Lender (Aegis) and "Lender's successors

and assigns" (Countrywide).  Doc. No. 1-1. Compl. Ex. 2 at 3.  As a result, the

misstatement in the NOI does not suggest that MERS had no authority to foreclose,

much less caused Plaintiff any damages.  Thus, the fact that MERS misidentified

the Lender in the NOI does not support a plausible violation of § 667-5.

In sum, Plaintiff has failed to state a claim for breach of the mortgage

based on a violation of HRS § 667-5.  The court therefore GRANTS Defendants'

Motions to Dismiss Plaintiff's breach of contract claim based on a violation of

HRS § 667-5.

As to whether this dismissal should be with leave to amend, the court

further finds that granting leave would be futile.  Plaintiff has had multiple

opportunities to assert a breach of contract claim based on violation of HRS § 667-

5, and has failed to identify any cognizable basis for such violation.  Rather,

Plaintiff argues that she can assert a claim for violation of § 667-5 based on the fact

that Aegis was in bankruptcy at the time of the foreclosure.  *See* Doc. No. 75, Pl.'s

Opp'n at 19-20.  Plaintiff ignores that she had included such claim in her FAC, and

the June 27, 2012 Order determined that it failed to state a cognizable claim.

Plaintiff offers no new allegations that would correct the deficiencies of such claim as outlined in the June 27, 2012 Order.  Further, during briefing on the Motions to Dismiss the FAC, Defendants presented evidence that Aegis transferred the mortgage loan to Countrywide before declaring bankruptcy.  Plaintiff accepted these facts in her Opposition to the Motions to Dismiss the FAC and proposed new theories of liability.  *See* Doc. No. 61, Pl.'s Opp'n at 9.  As a result, the June 27, 2012 Order dismissed the claim without leave to amend.[7]  In light of this procedural history, any attempt by Plaintiff to revisit a claim based on Aegis' bankruptcy would be futile.

In sum, the court GRANTS Defendants' Motion to Dismiss Plaintiff's breach of contract claim based on a violation of HRS § 667-5, without leave to amend.

## V.  CONCLUSION

Based on the above, the court GRANTS Defendants' Motions to Dismiss, with leave for Plaintiff to assert a breach of contract claim for failure to comply with section 22 of the mortgage.

If Plaintiff so chooses, she may file a Third Amended Complaint,

---

[7]  Plaintiff suggests that the court forced Plaintiff to drop her breach of contract claim asserting that Aegis improperly transferred the mortgage loan to Countrywide while Aegis was in bankruptcy.  *See* Doc. No. 68, SAC ¶¶ 52-53.  Such suggestion does not stand scrutiny in light of this procedural history.

21

consistent with this Order by January 11, 2013.  Plaintiff is further notified that a Third Amended Complaint supersedes the Complaint, the FAC, and the SAC. *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the court will treat the Complaint, the FAC, and the SAC as nonexistent.  *Ferdik*, 963 F.2d at 1262.

This Order limits Plaintiff to filing a Third Amended Complaint that attempts to cure the specific deficiencies identified in this Order.  That is, this Order does not grant Plaintiff leave to amend to file a Third Amended Complaint that asserts any different theories or causes of action.  If Plaintiff fails to file a Third Amended Complaint by January 11, 2013, this action will be dismissed and the case closed.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 26, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Lee v. Mortg. Electronic Registration Sys. et al.*, Civ. No. 10-00687 JMS/BMK, Order (1) Granting Defendant Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Second Amended Complaint, Doc. No. 70; (2) Granting Defendant Countrywide Bank, FSB's Motion to Dismiss Second Amended Complaint, Doc. No. 69; and (3) Granting Limited Leave to Amend