IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JUANITA FAYE PUALANI LEE,  )<br>  )<br>        Plaintiff,  )<br>  )<br>   vs.  )<br>  )<br>  )<br>MORTGAGE ELECTRONIC  )<br>REGISTRATION SYSTEMS, INC.;  )<br>COUNTRYWIDE BANK, FSB; and  )<br>DOES 1-10,  )<br>  )<br>        Defendants.  )<br>_____  ) | CIVIL NO. 10-00687 JMS/BMK<br><br>ORDER GRANTING DEFENDANT<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.'S<br>MOTION FOR SUMMARY<br>JUDGMENT, DOC. NO. 124 |

## ORDER GRANTING DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 124

### I. SUMMARY

Plaintiff Juanita Faye Pualani Lee ("Plaintiff") filed this action over four years ago alleging state law claims against Mortgage Electronic Registration Systems, Inc. ("MERS") and Countrywide Bank, FSB ("Countrywide") stemming from MERS' non-judicial foreclosure of Plaintiff's home located at 954 Alewa Drive, Honolulu, Hawaii 96817 (the "subject property"). In foreclosing on the subject property, MERS asserted that it was acting on behalf of Plaintiff's original mortgagee, Aegis Wholesale Corporation ("Aegis"), which was in bankruptcy at

the time of foreclosure.  Plaintiff based her claims on various alleged defects in MERS' authority to foreclose (due both to Aegis' bankruptcy and other purported problems), and failure to follow Hawaii's non-judicial foreclosure statute, Hawaii Revised Statutes ("HRS") § 667-5 (now repealed).

Three separate courts have addressed these claims, and only a single, limited claim remains.  The action was initially transferred to the United States District Court for the District of Arizona as part of a multidistrict litigation (the "MDL Court"), which, after remanding two claims to this court, dismissed the remaining claims.  *Lee v. MERS*, 2012 WL 1906503 (D. Ariz. May 25, 2012).  This court dismissed the remanded claims.  *See Lee v. MERS*, 2012 WL 6726382 (D. Haw. Dec. 26, 2012).  On appeal from both dismissals, the Ninth Circuit affirmed this court, and affirmed in part the MDL Court, except as to the MDL Court's dismissal of Plaintiff's claim that MERS violated HRS § 667-5 on the basis that it had no authority to act where Aegis was in bankruptcy.  *Lee v. MERS*, 555 F. App'x 661, 664 (9th Cir. 2014).  The MDL Court subsequently remanded the remaining claim to this court.  Doc. No. 97.

MERS now seeks summary judgment, arguing that Plaintiff's claim that MERS violated HRS § 667-5 due to Aegis' bankruptcy fails because there is no genuine issue of material fact that Aegis transferred Plaintiff's loan to

Countrywide Warehouse Lending ("Countrywide Warehouse") before filing for bankruptcy,[1] and in any event the bankruptcy court authorized Aegis to continue to sell loans while in bankruptcy. Based on the following, the court GRANTS MERS' Motion for Summary Judgment.

## II. BACKGROUND

**A. Factual Background**

*1. Aegis Mortgage, Aegis, and Countrywide Warehouse*

On December 14, 2000, Aegis Mortgage Corporation ("Aegis Mortgage") entered into a Revolving Credit and Security Agreement ("Credit Agreement") with Countrywide Warehouse. *See* Doc. No. 125, Def.'s Concise Statement of Facts ("CSF") ¶ 1.[2] Under the Credit Agreement, Countrywide Warehouse, as Lender, provided Aegis Mortgage, as Borrower, with a line of credit from which Aegis Mortgage obtained funds to originate mortgage loans, and Aegis Mortgage granted Countrywide Warehouse a security interest in and a lien

---

[1] Plaintiff had originally based her claims on a number of additional facts, including that (1) the notice of foreclosure provided that MERS was acting "as nominee for Aegis Wholesale Corporation." Doc. No. 132-4, Pl.'s Ex. 3; and (2) the Quitclaim Deed states that MERS made the transfer to Countrywide Bank, FSB, "as nominee for Aegis Wholesale Corporation." Doc. No. 132-7, Pl.'s Ex. 6. Because this court and the Ninth Circuit have already determined that these facts do not provide a basis for a claim, *see* 2012 WL 677382, at *7, 555 F. App'x at 665, the only claim remaining in this action is that MERS violated § 667-5 due to Aegis' bankruptcy.

[2] To the extent a fact and/or portion of a fact cited by the court is not in dispute, the court cites directly to the MERS' CSF.

on any mortgage loans originated or acquired with funds obtained from the line of credit. *Id.* ¶ 3.

Aegis is a subsidiary of Aegis Mortgage. Doc. No. 125, Def.'s CSF ¶ 2. And as to subsidiaries, the Credit Agreement (1) states that "[r]eference to any party shall mean that party and its successors and assigns permitted by the terms of this Agreement," Doc. No. 125-3, Def.'s Ex. A-1 at Art. 1.2(c); (2) refers to Aegis Mortgage's subsidiaries in the Credit Agreement, *id.* at ECF pages 19, 23, 31, 44, 47-48, 51 of 51; (3) provides at the signature page that "Borrower" includes "AEGIS Mortgage Corporation and Subsidiaries," *id.* at ECF page 38 of 51; and (4) attaches as Exhibit B a Note for $120,000,000 signed by "AEGIS Mortgage Corporation and Subsidiaries" in favor of Countrywide Warehouse. *Id.* at ECF page 51 of 51.

2. *Plaintiff's Mortgage Loan with Aegis*

On July 24, 2007, Plaintiff obtained a $728,000 mortgage loan from Aegis to purchase the subject property. Doc. No. 125, Def.'s CSF ¶ 4. In connection with the loan, Plaintiff executed a promissory note (the "Note"), secured by a mortgage ("Mortgage") in favor of Aegis. *Id.* ¶ 6. The Mortgage defines "Lender" as Aegis, *id.* ¶ 7, and describes that MERS "is a separate corporation that is acting solely as a nominee for Lender and Lender's successors

and assigns. MERS is the mortgagee under this Security Instrument." Doc. No. 1-1, Compl. Ex. 2 at 2.[3] The Mortgage further provides:

> Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale [the subject property]. . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with the law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take and action required of the Lender. . . .

*Id.* at 3-4. Finally, the Mortgage notifies Plaintiff that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." *Id*. at 12.

### 3. *Transfer of Mortgage Loan from Aegis to Countrywide Warehouse*

On August 11, 2007, Aegis Mortgage and its subsidiaries (including Aegis) entered into a voluntary foreclosure agreement with Countrywide Warehouse ("Foreclosure Agreement"). Doc. No. 125, Def.'s CSF ¶ 10. Pursuant

---

[3] Although neither party provided the Mortgage as an exhibit, it was attached to the Complaint. The court takes judicial notice of the documents attached to the Complaint, including the Mortgage and other documents recorded in the Hawaii Bureau of Conveyances. *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (explaining that the court may take judicial notice of "matters of public record"); *Lindsey v. Matayoshi*, 2012 WL 1656931, at *4 (D. Haw. May 9, 2012) (explaining when the court may take judicial notice of documents).

5

to the terms of the Foreclosure Agreement, Aegis Mortgage and its subsidiaries (including Aegis) voluntarily conveyed to Countrywide Warehouse all of their legal, equitable, and beneficial rights, title, and interest in the mortgage loans which were obtained under the terms and provisions of the Credit Agreement (*i.e.*, mortgage loans which Aegis entities funded through monies from the Credit Agreement). *See* Doc. No. 125-2, Kenney Decl. ¶ 13; Doc. No. 125-4, Def.'s Ex. A-2. Plaintiff's mortgage loan was included in this transfer -- Countrywide's records listed Plaintiff's loan as outstanding as of August 10, 2007, subject to the Foreclosure Agreement, and conveyed to Countrywide Warehouse on or about August 11, 2007. *See* Doc. No. 125-2, Kenney Decl. ¶¶ 13-15; Doc. No. 125-5, Def.'s Ex. A-3. In other words, these records demonstrate that Aegis funded Plaintiff's mortgage loan through funds received from Countrywide Warehouse through the Credit Agreement, and the mortgage loan was subsequently transferred to Countrywide Warehouse under the Foreclosure Agreement. *See also* Doc. No. 125-1, Kenney Decl. ¶¶ 13-15.

4. ***Aegis' Bankruptcy***

On August 13, 2007, Aegis Mortgage and its subsidiaries filed a petition for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. Doc. No. 125, Def.'s CSF ¶ 12. On that same

6

day, Aegis filed its First Day Motions, which included a motion for joint administration and a motion for an order authorizing Debtors (including Aegis) to sell loans owned by the Debtors and/or were part of the Debtors' Warehouse Lenders. *Id.* ¶ 13. In support of these motions, Aegis submitted the Declaration of Edward S. Robertson, Executive Vice President and Chief Financial Officer of the Debtors, who acknowledged and explained the pre-petition transfer between Countrywide Warehouse pursuant to the voluntary Foreclosure Agreement. *Id.* ¶ 14. On August 15, 2007, the bankruptcy court granted both motions, authorizing Aegis to act as the debtor-in-possession pursuant to Section 1107 of the Bankruptcy Code and "to sell any Owned Loans and Warehouse Loans in the ordinary course of business." *Id.* ¶ 15.

### 5. *Plaintiff's Default on the Mortgage Loan*

In summer 2008, Plaintiff defaulted on the mortgage loan. *Id.* ¶ 16. Blair Kenny, Senior Vice President at Bank of America, N.A., previously Executive Vice President and Chief Operations Officer in the warehouse lending division of Countrywide Home Loans, Inc., asserts that, based on his personal knowledge and review of and familiarity with BANA's records, the Note had been transferred by December 1, 2008 to Countrywide Bank, FSB, who was successor to Aegis Mortgage. *See* Doc. No. 125-2, Kenny Decl. ¶ 16. Further, the Allonge

7

to the Note shows that it was endorsed to Aegis Mortgage and Countrywide Bank. Doc. No. 125-6, Def.'s Ex. A-4.

On December 18, 2008, MERS, as mortgagee pursuant to former HRS §§ 667-5 through 667-10 as amended and the mortgage, gave notice that it would hold a sale of the subject property by public auction on February 6, 2009. *Id.* ¶ 18.

On February 6, 2009, Countrywide Bank, FSB purchased the subject property at foreclosure sale. Doc. No. 125, Def.'s CSF ¶ 19. On March 6, 2009, MERS transferred the subject property to Countrywide Bank, FSB by Mortgagee's Quitclaim Deed. *Id.* ¶ 20.

**B.     Procedural Background**

On October 11, 2010, Plaintiff filed this action in the First Circuit Court of the State of Hawaii alleging six state law claims titled: (1) prevention and reversal of wrongful nonjudicial foreclosure against MERS and Countrywide (Count I); (2) common law contract damages against MERS (Count II); (3) HRS Chapter 480 treble damages against MERS and Countrywide for unfair and deceptive acts and practices (Count III); (4) injunctive relief against MERS and Countrywide (Count IV); (5) punitive damages against MERS and Countrywide (Count V); and (6) accounting by MERS and by Countrywide (Count VI). On

8

November 19, 2010, MERS removed the action to this court.

On January 3, 2011, the Judicial Panel on Multidistrict Litigation transferred the action to the MDL Court for inclusion in the consolidated MERS proceedings pending there. On October 3, 2011, the MDL Court remanded to this court Count II of the Complaint and part of Count VI, to the extent the accounting claim was unrelated to the formation and/or operation of the MERS system. On May 25, 2012, the MDL Court dismissed Plaintiff's claims before it without leave to amend. *Lee*, 2012 WL 1906503, at *6.

As to the claims remanded to this court, Plaintiff agreed to amend them after MERS presented evidence establishing that Aegis transferred the mortgage loan before its bankruptcy, and this court granted successive Motions to Dismiss on Plaintiff's First Amended Complaint, and Second Amended Complaint. *Lee v. MERS*, 2012 WL 2467085 (D. Haw. June 27, 2012); 2012 WL 6726382 (D. Haw. Dec. 26, 2012). Although Plaintiff was granted leave to amend her Second Amended Complaint, she instead chose to appeal.

On appeal from both the MDL Court and this court, the Ninth Circuit affirmed this court in full and affirmed and reversed the MDL Court in part. 555 F. App'x at 664. The MDL then remanded this sole remaining claim to this court.

On August 7, 2014, MERS filed a Motion for Judgment on the

Pleadings. Doc. No. 102. At a September 29, 2014 hearing, the court denied the Motion from the bench, without prejudice to MERS filing a Motion for Summary Judgment. Doc. Nos. 110, 116.

MERS filed its Motion for Summary Judgment on November 26, 2014, Doc. No. 124, Plaintiff filed her Opposition on December 10, 2014, Doc. No. 130, and MERS filed its Reply on December 17, 2014. Doc. No. 134. Pursuant to Local Rule 7.2(d), the court determines the Motion without a hearing.

### III. <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV. **DISCUSSION**

Remaining in this action is a single claim remanded by the Ninth Circuit for violation of former HRS § 667-5, which authorized non-judicial foreclosure under power of sale by "the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act in the premises." The Ninth Circuit determined that Plaintiff "plausibly alleged that MERS was 'neither the mortgagee, nor the mortgagee's successor in interest, nor authorized by the power to act in the premises, because [Aegis'] bankruptcy terminated MERS' status as the lender's nominee under the power of sale.'" 555 F. App'x at 664. (citations omitted). In making this determination, the Ninth Circuit recognized that although the parties now agree that Aegis transferred the mortgage loan before declaring bankruptcy, such facts were not properly raised before the MDL court or the Ninth Circuit:

> Although the parties now agree that Lee's lender transferred Lee's mortgage two days before it declared bankruptcy, this fact, even if judicially noticeable, was neither raised nor argued in the transferee court. Nor do the briefs on appeal address the effect of this transfer on MERS' authorization to act under the power of sale. We will not evaluate in the first instance, without the benefit of briefing, the effect of a fact that was not presented to the transferee court. *See McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 392 n.7 (9th Cir. 2000).

*Id.* at 664 n.2.

MERS argues that there is no genuine issue of material fact that Aegis transferred Plaintiff's loan to Countrywide Warehouse before filing for bankruptcy, and even if there were an issue as to the timing of this transfer, the bankruptcy court authorized Aegis to sell the loan. The court agrees.

The facts, viewed in a light most favorable to Plaintiff (and largely undisputed), establish that Aegis transferred Plaintiff's mortgage loan to Countrywide Warehouse before declaring bankruptcy. Specifically, there is no dispute that on July 24, 2007, Plaintiff entered into a mortgage loan transaction with Aegis on the subject property. *See* Doc. No. 125, Def.'s CSF ¶ 4. There is also no dispute that on or about August 11, 2007, Aegis Mortgage and its subsidiaries entered the Foreclosure Agreement to transfer to Countrywide Warehouse all mortgage loans originated with funds obtained from the line of credit established by the Credit Agreement. *Id.* ¶¶ 10-11.

The undisputed evidence further establishes that Plaintiff's mortgage loan was part of this transfer to Countrywide Warehouse -- it is listed as one among those that were outstanding as of August 10, 2007, subject to the Foreclosure Agreement, and conveyed to Countrywide Warehouse on or about August 11, 2007. *See* Doc. No. 125-2, Kenney Decl. ¶¶ 13-15; Doc. No. 125-5,

Def.'s Ex. A-3. Finally, it is undisputed that Aegis declared bankruptcy on August 13, 2007, two days after this transfer. *See* Doc. No. 125, Def.'s CSF ¶ 12. And to the extent that any argument could be made that this transfer required judicial approval given its proximity to the bankruptcy filing, it is also undisputed that the bankruptcy court authorized Aegis to act as the debtor-in possession and to sell mortgage loans in the ordinary course of business. *Id.* ¶ 15. Thus, viewed in a light most favorable to Plaintiff, the evidence establishes that Aegis had authority to and in fact transferred the mortgage loan to Countrywide Warehouse.

In opposition, Plaintiff points to the fact that the December 14, 2000 Credit Agreement states that it is between Countrywide Warehouse and Aegis Mortgage (not its subsidiary Aegis), and argues in summary fashion that it is ultimately unknown whether Plaintiff's mortgage loan was funded through the line of credit obtained through the Credit Agreement. Plaintiff's argument ignores, however, that the Credit Agreement plainly includes Aegis by (1) referring to Aegis Mortgage's subsidiaries in the Credit Agreement, Doc. No. 125-3, Def.'s Ex. A-1 at ECF pages 19, 23, 31, 44, 47-48, 51 of 51; (2) providing at the signature page that "Borrower" includes "AEGIS Mortgage Corporation and Subsidiaries," *id.* at ECF page 38 of 51; and (3) attaching as Exhibit B a Note for $120,000,000 signed by "AEGIS Mortgage Corporation and Subsidiaries" in favor

14

of Countrywide Warehouse. *Id.* at ECF page 51 of 51.

And even if there is any question whether Aegis is a party to the Credit Agreement, the undisputed evidence establishes that Plaintiff's mortgage loan was in fact transferred to Countrywide Warehouse pursuant to the Foreclosure Agreement -- Plaintiff's loan is listed as one among those that were outstanding as of August 10, 2007, subject to the Foreclosure Agreement, and conveyed to Countrywide Warehouse on or about August 11, 2007. *See* Doc. No. 125-2, Kenney Decl. ¶¶ 13-15; Doc. No. 125-6, Def.'s Ex. A-4. Plaintiff presents no contrary evidence disputing such fact.

In further opposition, Plaintiff argues -- with little elaboration or support -- that MERS has not established its authority to foreclose because it has failed to present evidence that it possessed the Note at time of foreclosure, and/or that the Note was endorsed and assigned from Aegis to Countrywide prior to the foreclosure. *See* Doc. No. 130, Pl.'s Opp'n at 12-13; *see also* Doc. No. 132, Pl.'s Responsive CSF ¶¶ 11, 17. This argument fails for several reasons.

As an initial matter, this argument completely ignores this court's previous orders in this case, which have been affirmed on appeal. In particular, the December 26, 2012 Order held that "as to Plaintiff's assertion that MERS could not foreclose without possession of the promissory note, this court has

rejected that HRS § 667-5 includes any affirmative requirement that the mortgagee produce the note." *Lee*, 2012 WL 6726382, at *7 (citations omitted). The December 26, 2012 Order further held that Plaintiff cannot "assert[] a violation of § 667-5 based on MERS' alleged lack of authority to foreclose." *Id.* at *7; *see also Cervantes v. Countrywide Home Loans Inc.*, 656 F.3d 1034, 1044 (9th Cir. 2011) (determining that an assignment of a mortgage loan is not rendered invalid where the note is split from the deed). The court will not revisit these determinations.

Further, Plaintiff has presented no evidence contradicting MERS' evidence that the Note was transferred to Countrywide before the foreclosure as asserted by the Kenney Declaration. *See* Doc. No. 125-2, Kenney Decl. ¶ 16; *see also* Doc. No. 125-6, Def.'s Ex. A-4 (Allonge to the Note). Instead, Plaintiff points only to her allegations in her pleadings as a basis for questioning who holds the Note. *See* Doc. No. 130, Pl.'s Opp'n at 13. Needless to say, allegations are not evidence, and Plaintiff has therefore failed to raise a genuine issue of material fact that MERS was not authorized to foreclose on the subject property. *See also Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 ("When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward

with specific facts showing that there is a *genuine issue for trial*.").

In sum, Plaintiff has failed to raise a genuine issue of material fact in support of her § 667-5 claim that MERS lacked authority to transfer the mortgage loan to Countrywide Warehouse due to Aegis' bankruptcy. The court therefore GRANTS MERS' Motion for Summary Judgment.

## V. CONCLUSION

Based on the above, the court GRANTS Defendant MERS' Motion for Summary Judgment. Because no claims remain in this action, the court directs the Clerk of Court to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 30, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Lee v. Mortg. Electronic Registration Sys., et al.*, Civ. No. 10-00687 JMS/BMK, Order Granting Defendant Mortgage Electronic Registration Systems, Inc.'s Motion for Summary Judgment, Doc. No. 124